IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DEXTER NELSON**   **MOVANT**

**v.**   **No. 4:15CR51-NBB-JMV**

**UNITED STATES OF AMERICA**   **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Dexter Nelson to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion; Mr. Nelson has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be dismissed as waived, as procedurally barred, and, in the alternative, as meritless.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2255**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order

the Government to file a response or to take other appropriate action. *Id.* The judge may then require the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**

A federal Grand Jury returned an indictment filed April 23, 2015 naming Dexter Nelson and others in charges of drug conspiracy (Count One) and money laundering conspiracy (Count Two). Nelson pled guilty to Counts One and Two of the Indictment. Mr. Nelson signed the plea agreement and supplement which stated in part:

> in the event a motion for a downward departure pursuant to § 5K1.1 is filed and granted, Defendant hereby expressly waives any and all rights to appeal the conviction and/or sentence imposed in this case, and the manner in which sentence was imposed, on any ground whatsoever, including but not limited to the grounds set forth in 18 U.S.C. § 3742, except to claims relating to prosecutorial misconduct and ineffective assistance of counsel relating to the validity of the waiver of appeal or the validity of the guilty plea itself. If a § 5K1.1 is filed and granted, Defendant also hereby expressly waives all rights to contest or collaterally attack the conviction and/or sentence, and the manner in which sentence was imposed, in any post-conviction proceeding, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255 except to claims relating to prosecutorial misconduct and ineffective assistance of counsel relating to the validity of the waiver of appeal or the validity of the guilty plea itself.

At the change of plea hearing, the waiver was again read into the record, and Nelson indicated that the Assistant United States Attorney accurately read the agreement. The court inquired if Nelson had any question about anything in the plea agreement or supplement, and Nelson responded in the negative.

The United States Probation Service completed the pre-sentence report. The PSR included the waiver as well in paragraph 10. Mr. Nelson's relevant conduct included 45.831 kilograms of cocaine hydrochloride and 908.329 kilograms of marijuana. (PSR ¶ 18).

A confidential informant saw Mr. Nelson in possession of 10 kilograms of cocaine and 500 pounds of marijuana on November 15, 2013, and told investigators that this "occurred every two weeks for a conservative estimate of three occasions, for a total of at least 30 kilograms of cocaine and 1500 pounds (680.4 kilograms of marijuana)." (PSR ¶ 17).

In his Motion to Vacate, Nelson neglects to discuss that the PSR details that his 18-wheeler went to Houston, Texas on at least five occasions, with the last occasions ending in a 3-kilogram cocaine and 40 pounds of marijuana seizure. (PSR ¶ 16). The PSR stated:

> Based upon the above drug seizures, drug proceeds, wiretap interceptions, surveillance, and historical information accumulated by the DEA, including interviews with the co-conspirators, and cooperating witnesses, the total amount of drugs attributed to Nelson is at least 45.831 kilograms of cocaine hydrochloride and 908.329 kilograms of marijuana.

(PSR ¶ 18).

This resulted in Nelson's base offense level being 34, plus 2 points for money laundering minus 3 points for acceptance of responsibility for a Total Offense Level of 33. (PSR ¶ 25, 26) Nelson was assessed a criminal history category of III, which included a 2-point increase for committing the instant offense while under supervision. (PSR ¶ 45). As such, his guideline range was 168 to 210 months imprisonment. (PSR ¶ 76).

On March 18, 2016, the Government filed a Rule 5K1.1 Motion for Downward Departure. (Docket No. 178). At the sentencing, the court granted the Government's motion and sentenced Nelson to 140 months. Notably, at Nelson's sentencing, the Court stated:

> Normally, I would give you the maximum under the guidelines or maybe even an upward departure above the Guidelines. But the government has made a motion that you be given some leniency because of your cooperation.

The clerk of the court entered the judgment on April 5, 2016. On March 21, 2017, Nelson filed a Motion to Vacate under 28 U.S.C. § 2255. In that motion, Nelson sets forth the following issues:

**Issue No. 1:** Nelson asserts that his counsel provided ineffective assistance by not filing an objection to the amount of drugs attributed to Nelson in the Pre-Sentencing Report (PSR).

**Issue No. 2:** Nelson asserts that his counsel provided ineffective assistance by not filing an objection to the presentence report as to a two-point increase in Nelson's criminal history

computation in the PSR. Mr. Nelson contends that the offenses were committed while Nelson was no longer under supervision, and had his counsel objected to the two-point increase in his criminal history computation, he would have likely received a lesser sentence.

He also argues that these errors rise to the level of a due process violation because his Guideline range was not properly calculated before the court granted the government's motion for a downward departure under § 5K1.1 of the U.S. Sentencing Guidelines.

His claims are barred by a valid waiver of appeal in his plea documents. Also, since Nelson is not challenging the validity of the guilty plea, his claims are procedurally barred. "A voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). His final, unnumbered, ground is without substantive merit.

### Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient, and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673,

685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011). However, a voluntarily entered guilty plea waives all non-jurisdictional defects in the proceedings against the defendant, including claims of ineffective assistance of counsel, except where the movant alleges that the ineffectiveness rendered his guilty plea involuntary. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (citing *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991)). Mr. Nelson has neither denied his guilt, nor that counsel induced him to plead guilty, nor that, but for counsel's actions, he would have proceeded to trial.

### Waiver of Collateral Review

Even the most basic rights of criminal defendants are subject to waiver. *Peretz v. United States*, 501 U.S. 923, 936, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991). A defendant may waive constitutional rights as part of a plea agreement. *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992) (citing *Town of Newton v. Rumery*, 480 U.S. 386, 393, 107 S. Ct. 1187, 1192, 94 L. Ed. 2d 405 (1987). The right to appeal is grounded in statute, not the Constitution. *Melancon*, 972 F.2d at 567 (citing *Abney v. United States*, 431 U.S. 651, 656, 97 S. Ct. 2034, 2038, 52 L. Ed. 2d 651 (1977)). A defendant may waive her statutory right to appeal as part of a plea agreement. *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995). A waiver of post-conviction relief is valid if the waiver is both informed and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

For a waiver to be knowing and voluntary, the defendant must know that he had "a right to appeal his sentence and that he was giving up that right." *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994). For example, in *United States v. McKinney*, the Fifth Circuit found that "[b]ecause [defendant] indicated that he had read and understood the plea agreement, which includes an explicit, unambiguous waiver of appeal, the waiver was both knowing and voluntary." 406 F.3d 744, 746 (5th Cir. 2005). The district court must "insure that the defendant fully understands [her] right to appeal and the consequences of waiving this right." *United States v. Gonzales*, 259 F.3d 355, 357 (5th Cir. 2001) (citations omitted). Waivers of appeal are enforceable where the waiver language in the plea agreement is clear and unambiguous, and the defendant knowingly and voluntarily waived his rights. *United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002).

In the Fifth Circuit, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *Wilkes*, 20 F.3d at 653. The only exception to the waiver is "when the claimed [ineffective] assistance directly affected the validity of that waiver or the plea itself." *United States v. Hollins*, 97 F. App'x 477, 479, 2004 WL 963250, *3 (5th Cir. May 4, 2004); *see also White*, 307 F. 3d at 339 (a claim of ineffective assistance of counsel survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself.") Should any claims survive the waiver, the § 2255 petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). A defendant's bare allegations are insufficient to support a claim for relief under 28 U.S.C. § 2255. *United States v. Smith*, No. 90-292, 1993 WL 17683 (E.D. La., January 14, 1993) (unpublished); *see Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (bald assertions,

unsupported in the record, are of no probative evidentiary value); *see also United States v. Stracener*, 959 F.2d 31, 33 (5th Cir. 1992) (applying Ross analysis to a 28 U.S.C. § 2255 motion).

In the instant case, Mr. Nelson knowingly and voluntarily entered into his plea agreement and waived his right to a direct appeal. The court reviewed the rights Mr. Nelson was giving up in order to plead guilty, including the waiver of his ability to pursue a direct appeal or to collaterally attack his conviction or sentence.

> And, Your Honor, there's one – there's one provision of the plea supplement I'd like to point out, with the Court's permission. That's 3(b). It states that, if the Government files a 5K1.1 motion and the Court grants that motion, then Mr. Nelson would be waiving any right to appeal the conviction and/or sentence in this case and the manner in which the sentence was imposed under grounds set forth in 18 U.S.C. 3742 and 28 U.S.C. § 2255.
>
> Now, the agreement does except out prosecutorial misconduct and ineffective assistance of counsel relating to the validity of the waiver of appeal or the validity of the guilty plea itself.

Doc. 134 (Change of Plea Hearing) at 4-10. Upon questioning by the court, Mr. Nelson agreed that the government accurately stated the terms of the agreement and that he understood the agreement. *Id.* at 10-11.

Thus, Mr. Nelson signed the plea supplement which contained an express waiver of his rights to appeal and collaterally challenge his conviction and sentence. By signing the plea agreement and supplement, Nelson swore that he knew and agreed with the terms contained within the agreement. As Mr. Nelson confirmed under oath, orally and in writing, that he understood his limited appeal rights, he cannot now allege that he failed to understand the waiver. He has not alleged a defect in the validity of the waiver itself – nor a defect in the plea agreement (the exceptions to the waiver). Hence, Mr. Nelson stated under oath the he understood his plea documents, and the waiver was made

knowing and voluntarily. *McKinney*, 406 F.3d at 746. For these reasons, Mr. Nelson's claims are barred by the valid waiver contained in his plea agreement and supplement.

### Nelson's Claims Are Waived Pursuant to His Plea of Guilty

In addition, as Mr. Nelson has not challenged the validity of his guilty plea, he has waived them because "[a] voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). As discussed above, Mr. Nelson knowingly and voluntarily entered a plea of guilty to the charges in this case. Hence, he has not shown that counsel's performance during the plea process was deficient. Further, he has not shown that he suffered prejudice from counsel's actions because he has neither denied his guilt nor alleged that counsel improperly induced him to plead guilty. Neither did he allege that, but for counsel's actions, he would have proceeded to trial. In other words, he has not even alleged that, but for counsel's alleged deficiency, the outcome of the proceedings would have been different. Mr. Nelson waived his ineffective assistance of counsel claims regarding this issue by virtue of his guilty plea.

### Nelson's Counsel Properly Declined to Challenge the Drug Quantity

In the PSR, the Probation Service calculated Mr. Nelson's drug attribution at 45.831 kilograms of cocaine and 908.329 kilograms of marijuana, with the drugs translating under the Drug Equivalency Level to 9,166.2 kilograms of marijuana for a total of 10,074.529 kilograms of marijuana. That drug quantity set Nelson's Base Offense Level to 34. (PSR ¶ 18). Mr. Nelson argues that this quantity is unreasonable because the calculation is based upon claims from a confidential informant (CI). (Nelson's 28 USC § 2255 Motion to Vacate, Set Aside, or Correct Sentence, 15). As noted in the PSR, the CI saw Nelson in possession of 10 kilograms of cocaine and 500 pounds of marijuana. (PSR ¶ 17).

The PSR also reflects that Nelson or Singleton transported 10 to 11 kilograms of cocaine and approximately 500 pounds of marijuana every two weeks for a at least three occasions, which (along with the other conduct) renders a total of 45.8 kilograms of cocaine and 908.3 kilograms of marijuana. (PSR ¶ 17). Nelson suggests that the only quantities of drugs documented in the PSR are 35.831 kilograms of cocaine, and 681.529 kilograms of marijuana.

Nelson argues that there is no explanation in the PSR as to how the CI could have known the weights of the drugs in Nelson's possession. He argues further that, had counsel contested these quantities, he may have been able to obtain a reduction in the amount attributed to him, with a quantity reduction as small as 0.74% capable of reducing his base offense level to 32.

These arguments are without merit. The PSR detailed each enhancement and its basis; the court adopted the PSR without objection from the defendant. "[I]nformation in the [PSR] is presumed reliable and may be adopted by the district court without further inquiry;" as such, the court had not need to investigate further. *United States v. Bueno*, 585 F.3d 847, 851 (5th Cir. 2009) (citing *United States v. Carbajal*, 290 F.3d 277, 287 (5th Cir. 2002)).

In any event, the court has wide discretion to use estimates to calculate the drug amounts that may be attributed to a defendant in a drug case. A district court "may consider 'estimates of the quantity of drugs for sentencing purposes.'" *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998) (quoting *United States v. Sherrod*, 964 F.2d 1501, 1508 (5th Cir. 1992)); *see* U.S.S.G. § 2D1.1, cmt. N.5 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.") "Estimates need not be precise." *United States v. Baker*, 509 F. App'x 358, 358 (5th Cir. 2013) (per curiam) (unpublished); *Alford*, 142 F.3d at 831-32 (holding there was no clear error when the drug quantity was based on imprecise testimony). A court may also, when necessary, "extrapolate the [drug]

quantity from 'any information that has sufficient indicia of reliability to support its probable accuracy, including … hearsay.'" *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2005) (quoting *Alford*, 142 F.3d at 832).

Thus, Mr. Nelson's ineffective assistance of counsel claim fails to meet *Strickland's* first prong. He also fails to meet the second prong: a showing of prejudice. He has not shown that there is a reasonable probability that, but for the alleged errors, the result of the proceeding would have been different. Nelson argues – without supporting evidence – that, had counsel made an objection, he *may* have received a reduced sentence. However, objecting to the drug quantity was not without risk. Evidence at the hearing could have led to calculation of greater drug quantities. Courts must give great deference to trial counsel's strategic decisions like this one. *Strickland*, 466 U.S. at 688. In addition, Mr. Nelson greatly reduced his exposure by pleading guilty under counsel's guidance. Had Mr. Nelson proceeded to trial and convicted, his guideline imprisonment range with a level III criminal history and a level 36 offense level would have been 235 months to 293 months. As a result of his plea deal with the government, after the court granted the government's § 5K1.1 motion, Mr. Nelson's sentence was 140 months, less than half of the upper end of the Guideline range. Mr. Nelson has not shown that counsel provided ineffective assistance during the plea negotiation and sentencing.

### Counsel Provided Effective Assistance in Deciding Not to Object to the Two Point Criminal History Enhancement

Nelson asserts that his counsel provided ineffective assistance by not filing an objection to the presentence report as to a two-point increase in Nelson's criminal history computation in the PSR. Nelson contends that the offenses were committed while he was no longer under supervision, and had counsel objected to the two-point increase in his criminal history computation, he would have likely received a lesser sentence. He also asserts this constitutes a due process violation. These allegations are directly contradicted by the record. As the PSR notes in paragraph 44, Mr. Nelson

committed the instant offense while he was under supervision with this court, Docket Number 2:04CR48-001. As such, two points were added. He alleges that his supervision period ended October 1, 2013. Nelson states that nothing in the PSR discusses his conduct during that timeframe. He is incorrect on both points. Contrary to Nelson's claims, the PSR and Indictment stated that the drug conspiracy commenced in July of 2013, several months *before* the end of his supervision (October 2013.) (PSR ¶ 44). In any event, Mr. Nelson cannot show that the enhancement extended his sentence. Even assuming that Nelson should have been assessed only three criminal history points, with a criminal history level of II, his guideline range would have been 151-188 – which is higher than his ultimate sentence of 140 months.

## Conclusion

In sum, the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 will be dismissed for three reasons. First, Mr. Nelson waived his right to seek relief under 28 U.S.C. § 2255 in his plea agreement. Second, his plea of guilty waived all non-jurisdictional defects in his conviction (except for challenges to the validity of his plea due to ineffective assistance of counsel, which he has not alleged). Finally, his claims are without substantive merit. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 31st day of March, 2020.

/s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE